# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

THOMAS STRAUB,

                                        Plaintiff,

        vs.

LINDA S. McMAHON, Commissioner of
Social Security,

                                        Defendant.

CASE NO. 06cv1462 BTM (AJB)

**ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT [Doc. #7] AND
GRANTING DEFENDANT'S CROSS-
MOTION FOR SUMMARY
JUDGMENT [Doc. #13]**

On July 19, 2006, Plaintiff Thomas Straub filed a complaint against Defendant Jo Anne B. Barnhart, then Commissioner of Social Security, seeking that Defendant's decision to deny Plaintiff disability benefits under Title II of the Social Security Act be set aside and that Plaintiff be allowed to receive such benefits or, alternatively, that this Court remand the case to Defendant for a new hearing.  On November 30, 2006, Plaintiff filed a motion for summary judgment and, on January 29, 2007, Defendant filed a cross-motion for summary judgment.

For the reasons discussed below, the Court **DENIES** Plaintiff's motion, and **GRANTS** Defendant's motion.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act on December 20, 2004.   His application was denied initially and on

06cv1462

reconsideration.  Plaintiff then filed a request for an administrative hearing, which was held on February 8, 2006.  In a decision dated April 20, 2006, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's request for benefits under Title II.  The ALJ found that Plaintiff retained the residual capacity to perform the full range of light level work and "was not under a 'disability,' as defined in the Social Security Act, at any time prior to December 31, 2000, his date last insured."  (Decision of ALJ at 6; Administrative Record ("AR") at 16.)  Plaintiff then requested a review by the Appeals Council, which was denied. Having exhausted his administrative remedies, Plaintiff filed the instant complaint.

## II.    SUMMARY OF EVIDENCE

Plaintiff alleges disability based upon back injury, poor eyesight due to macular degeneration, and depression.  As there is absolutely no evidence that Plaintiff's poor eyesight or depression began before his date last insured (December 31, 2000), this Court considers the only relevant inquiry to concern Plaintiff's allegedly disabling back injury.

In August of 1990, Plaintiff saw Dr. Thomas Ducker complaining of pain.  (AR at 108.) In an August 21, 1990 letter from Dr. Ducker to Dr. Charles Kinzer, Dr. Ducker reported Plaintiff's symptoms:

> For 6 weeks now, [Plaintiff] has had pain in the right buttock, going down the right leg into the calf.  This is associated with marked weakness in plantar flexion.  He cannot walk on his toes.  He has numbness in a S1 distribution on the lateral aspect of his foot.  The right ankle reflex is absent.  All of this with a persistent straight leg raising sign, in spite of being seen by a chiropractor, treated with anti-inflammatory medications, and being on pain medications.
>
> Before this right sciatica occurred, he did notice some tightness in his back, but no significant radiculopathy.  The radiculopathy has persisted and the weakness is profound.[1]

(Id.) Dr. Ducker diagnosed "classic S1 lumbrosacral radiculopathy" and stated that "the CT scan clearly shows the L5, S1 disk herniation on the right sided nerve root.  There is no doubt about the diagnosis and what is wrong."  (Id.)  The doctor recommended surgery if the

---

[1] Merriam Webster's Medical Dictionary defines "radiculopathy" as: "any pathological condition of the nerve roots." (Available online at http://www.merriam-webster.com/medical, last visited June 25, 2007).

1  problem persisted and noted:

2

3          I think his chances of getting a strong leg without surgery are slim.  But I had
           to tell him in all honesty that our patients with or without surgery some 10
           years later may have a poor joint at that level because of the loss of the
4          intervertebral disk and cushion.

5  (Id. at 108-109.)   On September 6, 1990, Plaintiff underwent a successful lumbosacral

6  laminotomy, with the removal of herniated disc L5-S1.  (Id. at 171, 177.)

7          In March, 1993, Plaintiff saw Dr. Ducker again with back pain.  In a March 3, 1993

8  letter to Dr. Barbara Furlow, Dr. Ducker stated:

9

10         Mr. Straub definitely, over the last three weeks, has had an episode of left
           sided cervical radiculopathy with pain and weakness.  The weakness has
           involved the biceps and brachial radialis and is associated with C6 root
11         symptoms.

12         When the pain is marked, there is neck spasms, with compression onto the
           brachial plexus where he gets numbness on the ulnar side of both upper
13         extremities.

14  (Id. At 166.)  Dr. Ducker stated that a CT scan had been performed which "confirmed the

15  disease at C5-6."  (Id.)  Dr. Ducker also noted "subtle changes above and below that [on the

16  spine] at 4-5 and 6-7," but he did "not think they were bad enough to worry about."  (Id.)  In

17  response to these injuries, Dr. Ducker prescribed a soft cervical collar for Plaintiff to use over

18  the following few weeks, and noted that he thought "the problem [would] resolve itself without

19  surgical intervention," but that "if [Plaintiff's] course [was] not one of improvement, we will try

20  to figure out whether or not it should be treated surgically."  (Id.)  Dr. Ducker followed up this

21  letter with another on March 9, 1993, which reiterated:

22

23         I met with the radiologist to go over Mr. Straub's films.  He certainly does
           have a bad C5-6 joint with associated spinal stenosis.

24         If the problem does not clear with medical therapy, then I think he is a good
           candidate for anterior cervical C5-6 diskectomy, decompression, grafting,
25         and fusion.   He clearly has a bad joint which accounts for the
           symptomatology.  He would do better not having that joint if it is going to
26         continue to plague him and irritate the spinal nerves and spinal cord.

27  (Id. at 167.)  No record of any treatment for Plaintiff's ailments from March 1993 through the

28  date last insured was presented.

                                        3

1  III.   STANDARD OF REVIEW

2        The Commissioner's denial of benefits may be set aside if it is based on legal error

3  or is not supported by substantial evidence.  <u>Jamerson v. Chater</u>, 112 F.3d 1064, 1066 (9th

4  Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance.  <u>Id.</u>

5  Substantial evidence is "relevant evidence which, considering the record as a whole, a

6  reasonable person might accept as adequate to support a conclusion."  <u>Flaten v. Secretary</u>

7  <u>of Health & Human Servs.</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).

8

9  IV.   DISCUSSION

10        In his motion for summary judgment, Plaintiff contends that: (1) the ALJ erred in failing

11  to develop the record by not ordering a consultive examination; (2) the ALJ should have used

12  the testimony of a medical expert to determine Plaintiff's residual functional capacity prior to

13  the date last insured; and (3) the ALJ should have used the testimony of a vocational expert

14  in determining Plaintiff's residual functional capacity.  As discussed below, the Court finds

15  that the ALJ's decision was supported by substantial evidence and was not based on legal

16  error.

17        To begin, the ALJ did not order a consultative examination ("CE") because, as he

18  indicated at the start of the administrative hearing, a CE would not help Plaintiff's case

19  because it would reflect the current state of affairs, many years after the date last insured.

20  (AR at 183.)  Plaintiff's attorney explicitly agreed with this determination, stating "[t]hat's

21  correct." (<u>Id.</u>)  Thus, Plaintiff waived this issue.  Even if a waiver would not be applicable, the

22  Court finds no reason to upset the ALJ's determination on this issue.  Plaintiff's attorney even

23  acknowledged at the hearing that there was a "big gap" in Plaintiff's medical records prior to

24  the date last insured, and that this was a "problem."  (AR at 182.)  However, a CE performed

25  in 2006 would not have remedied the glaring problem of inadequate records of Plaintiff's

26  alleged disability prior to 2001.

27        Second, the ALJ was not required to call a medical expert to aid in determining the

28  onset date of Plaintiff's disability because the ALJ did not find that Plaintiff had proven that

4

1   he is disabled.  The case cited by Plaintiff, <u>Armstrong v. Commissioner of the Social Security</u>

2   <u>Administration</u>, 160 F.3d 587 (9th Cir. 1998), stands for the proposition that an ALJ has a duty

3   to assist a claimant in creating a complete record by calling a medical expert to assist in

4   determining the onset date "where a record is ambiguous as to the onset date of disability."

5   160 F.3d at 590.  However, in this case, the ALJ did not find that Plaintiff ever became

6   disabled, as he concluded that Plaintiff currently "retains the . . . residual functional capacity

7   to perform the full range of light level work."  (AR at 13.)  Accordingly, there would be no

8   reason to employ a medical expert to help determine an onset date for a non-existent

9   disability.  <u>See</u> <u>Crane v. Shalala</u>, 76 F.3d 251, 255 (9th Cir. 1995) ("Because the ALJ found

10   that [claimant] could have returned to his prior work and was not disabled, the judge needed

11   no medical expert to determine the onset date of the alleged disability.").

12        Finally, Plaintiff argues that the ALJ erred in not taking the testimony of a vocational

13   expert because the grids were not properly applicable to a determination of Plaintiff's residual

14   functional capacity.  Plaintiff argues that, "[i]f plaintiff is limited to light work activity with a sit-

15   stand option, or other non-exertional limitations, vocational testimony would . . . be necessary

16   to determine whether plaintiff could engage in substantial gainful activity." (Pl.'s Mem. at 8.)

17   However, the ALJ specifically found that Plaintiff was able to perform the "full range" of light

18   level work, and this Court sees no reason to disturb that finding, as it is supported by

19   substantial evidence.  Accordingly, Plaintiff's condition presents no special limitations which

20   are not embodied in the grids and would require particularized vocational testimony.

21

22   **V.**    **CONCLUSION**

23        The ALJ applied the proper law and his decision was supported by substantial

24   evidence.  Accordingly, the Court **DENIES** Plaintiff's motion for summary judgment and

25   **GRANTS** Defendant's cross-motion for summary judgment.

26   //

27   //

28

06cv1462

The Clerk shall enter final judgment affirming the ALJ's denial of disability insurance benefits.

**IT IS SO ORDERED.**

DATED:  July 30, 2007

Honorable Barry Ted Moskowitz
United States District Judge

06cv1462